May it please the Court, my name is Greg Wallace and I represent Felecia Channell in this Social Security Disability Appeal. Ms. Channell is a 24-year-old woman who suffers from mild mental retardation and the issue today is whether the ALJ's finding that Ms. Channell does not meet Listing 1205B for intellectual disability is supported by substantial evidence on the record as a whole. Now the record shows that Ms. Channell underwent IQ testing in 1999 when she was a student. She had a verbal score of 58, performance score of 63 and a in all areas except in self-care. School records show that she was placed in special education classes in all substantive courses such as English, math, science, history. She has low scores in other testing that was performed at school, the Stanford test, there were several scores that were in the lowest percentiles, the individual achievement test or scores within the 50s and 60s. In literacy testing she scored in the lowest level possible there. She attempted to work after quitting school in the 12th grade, she tried to clean schools but she said, I couldn't understand what they were telling me and that job lasted only two months. Now in January of 2006 she was sent to Dr. DeRouche for IQ testing and he administered the Waze 3 in which Ms. Channell scored a verbal score of 67, performance IQ score of 59 and a full scale IQ score of 61. Now under the commissioner's regulations when you have an IQ test that has three different scores like this you take the lowest one for purposes of the listing so that would be the 59 here and that satisfies the requirement for 1205B for intellectual disability. Now the ALJ found that this score was not valid because Channell supposedly did not do her best on the test and then he also found that secondly that her activities of daily living show that she's functioning at a relatively normal level and so he concluded that she was not mildly retarded but only borderline. Don't we have to accept that she did not do her best finding? That finding is not as clear as the ALJ suggested here. Well you mean the DeRouche's opinion on which it's based or the finding itself? The finding, no you only have to accept the finding if it's supported by substantial evidence on the record as a whole. What is there that contradicts the little I know I've read of the record it's not crystal clear the DeRouche simply said did not validate the scores because had at least a suspicion. Well he didn't say that he did not validate the scores. He didn't say he didn't know. No actually he says he said that this Channell put forth fair effort toward the testing procedure. That was something that's not mentioned in the ALJ's decision. That's in his report and then at the end of his report he says the results of today's evaluation find that Felicia's overall intellectual functioning is commensurate with the mildly deficient range. Now mildly deficient doesn't mean mildly limited. It means mildly mentally retarded. That's the term that psychologists use when discussing the mildly retarded. Mental retardation is divided into three categories. There's mild, moderate, and severe. And as our citation to the DSM-IV indicates the mildly deficient or mildly retarded range runs from IQ scores from 55 to 70. So at a minimum. The last two thirds of which you're in 1205C. Yes. And then you have to have an additional substantial. An additional impairment. Yes. Yes. You're exactly right. The fact that she didn't have. No she doesn't have. There's nothing in the record that would indicate she has an additional significant impairment there. But under the rules it's the lowest IQ score. I mean her other IQ scores were in the 60 to 70 range. But it's this 59. And all Dr. DeRote said is that she put a little effort into the items at hand. Which I think he meant certain aspects of his evaluation. And that those, that should be simply kept in mind when reviewing the test results. But he did say specifically that she gave fair effort on the test. Fair, of course, being ambiguous. Well, fair effort. I mean for a person who's mildly, mildly retarded. Fair could mean good try or fair, I mean in my colloquial use of the word fair. It could mean you made a nice try or it could mean you were barely try. Which is why the ALJ should have addressed this question. But isn't his finding then supported by her failure or refusal to come to the CARB malingering evaluation? Well, that is a separate question. And I can provide, but I can provide you, in fact, I did with the district court in the brief there. I did not include it in the brief here. But I can provide you with the rule 24J, 28J letter citing several authorities that CARB testing is not applicable to people with mild mental retardation. And Dr. DeRoke, after conducting a very thorough examination, said she's not malingering, she's not exaggerating. And what the CARB test supposedly shows for people with other forms, for example, affective disorders, is that, is the possibility of malingering. Well, is there any evidence that that's why she didn't attempt? No, there's not. We don't know why she didn't attempt. She didn't have a car. She had, which we'll talk about with the daily activities, she failed the driver's test four times, she doesn't have a car, and so it's entirely possible that there were transportation issues or whatever. There's just nothing in the record for that. The ALJ makes it sound like she deliberately didn't do it to avoid, you know, being exposed as a malingerer. And I just think that there's nothing in the record that would suggest that. There's no evidence either way. Either way. Let's go back. Is fair effort a term of art or is it a colloquialism? I think it's probably a colloquialism, I would think, fair effort. But my point is that, at a minimum, the ALJ should have addressed this, these discrepancies in Dr. DeRouche's report, especially since her disability turns upon that. And my second point is that when you look at that, the simple admonition, you need to keep that in mind when looking at the test scores, when you compare that to all of the other evidence in the record that uniformly shows, all of the testing that was done, the earlier IQ test is consistent with the IQ test. Now, because it was administered at a young age, it's not considered valid for only, I think, for only two or four years. And so she was beyond that window. But the 1999 test is consistent with the scores found by Dr. DeRouche. She's in special education classes. Other testing that was done in the school level showed that she was functioning at a very low level intellectually. And so when you look at that, this one single discrepancy here, when you're looking, and the substantial evidence test talks about substantial evidence on the record as a whole, when you compare that to the record as a whole, there's simply not, this one discrepancy, which was left unresolved by the ALJ, is simply not enough to invalidate the IQ scores. Now, the district court didn't even get into the question of the validity of the IQ scores, because the district court said, well, the ALJ was right about her daily activities. And we certainly beg to differ about that as well. The daily activities that are cited by the ALJ here is that she was caring for four children, she had a driver's license, and she could perform light housework. Now, Ms. Channel testified that her children during the school year are at daycare all day, and that her aunt, her sister, her cousin, and her father help her out in caring with these children. She told Dr. DeRoe, she knows how to heat up her children's formula, change the crib sheets, give the child a bath, and change the children's diapers. Those are not activities that require a high level of intellectual functioning. And in fact, as we have discussed extensively in our briefs, the mildly retarded can perform a number of rudimentary activities of daily living. She has a driver's license, yes, but she failed the driver's test four times. She doesn't have a car. She testified she rarely drives. And she can do light housework. Now, the ALJ didn't mention the fact that other things that were brought out by Dr. DeRoe. She needs help sorting colors when she does laundry. She never obtained a GED. She's functionally illiterate. She can only read little words, and she can't make change. Now, Dr. DeRoe, here's what's significant. Dr. DeRoe, as the district court notes on page three of its opinion, which is at page 17 in the addendum here, district court quotes a long section out of Dr. DeRoe's report describing all of these activities. But here's the point. Dr. DeRoe concluded, and he's the expert here, that, I'll read the quote again, the results of today's evaluation find that Phylicia's overall intellectual functioning is commensurate with the mildly deficient range. And so, in Dr. DeRoe's view, knowing about all these activities, in his expert opinion, that didn't undermine her claim of mild mental retardation. And so, I don't know why the district court said that these comments suggest that plaintiff's abilities and activities are at a higher level than one would expect solely from accepting the lower IQ scores. The low IQ scores show that she's functioning in the mildly mentally deficient, mildly mentally retarded range. And that's exactly what Dr. DeRoe concluded. But the district court, to a lesser extent, and the ALJ, whose opinion is the important one here, determined, I think substituted his own opinion for that of the expert, and said, well, these activities show that she's functioning almost normal. Well, that just simply cannot be when you understand both the case law and the relevant literature in the DSM-IV regarding what the mildly retarded can and cannot do. And so, we would submit that the ALJ has no basis in law or in fact for making that determination with respect to her daily activities. If you accept the ALJ's view, then the non-institutionalized mentally retarded will never be able to prove disability under the listings. The hearing was June 2011. Why do we have five years with no follow-up IQ tests? The hearing was in June 2011. And the whole case focuses on these 2006 tests? Well, the ALJ could have sent her out for updated IQ tests. Now, the commissioner's regulations, I think, actually point out that IQ tests tend to stabilize at age 16, and since mental retardation is a lifelong condition that doesn't improve. But, yes, the ALJ could have sent her out for further testing, but he didn't in this particular case. So, we ask this court to remand for a proper consideration of her disability under the listings and for further development of the record. Thank you, Your Honor. Thank you. Mr. Sanders? May it please the court, my name is Jonathan Clark, and I represent Acting Commissioner Carolyn W. Colvin in this matter. The sole and narrow issue in this case is whether substantial evidence supports the ALJ's determination to reject the 2006 performance IQ score, 59. I'd like to first address a couple issues that were raised to opposing counsel. I think it's important here to stress that the ALJ did attempt to seek further testing. Going to Judge Loken's question, he did try to send her out for an additional consultative examination, a second consultative examination in August 2011 after the hearing. However, as is stated, appellant did not show for that hearing, or excuse me, that examination. That deprived the commissioner of an opportunity to check. Where is that in the administrative record? The ALJ states in his decision that he set up this appointment, but the record does not have a scheduled notice of scheduling or whatnot. But that's a finding or an issue that the appellant doesn't raise. The issue is not whether she knew about this or not. Did the appeals counsel address that? They looked at the whole record, Your Honor, and that's something that they would have looked at. They didn't address it, in other words? They didn't address the fact that she did not show no. So is it correct we have no idea, the circumstances, upon why she did or didn't appear? That's correct, Your Honor. From what we see from the record, the ALJ scheduled this August 2011 examination, additional testing, including the CARB examination, but she did not show, and the record does not show why, and appellant does not raise the issue that she wasn't given notice or anything to that effect. This is the CARB no-show incident? That's correct, Your Honor. The briefs don't talk about that as further IQ testing. Where do we get that in the record? On page 18, Your Honor, of the ALJ's decision, he talks about that. He talks about how the... I'm going to quote the language here for you. On page 18 of the transcript, excuse me, Your Honor, on the ALJ's decision, he said that the claimant was sent out for a recent consultative examination of her intellectual function and that was to be followed by the CARB test. How did she know that was going to be further IQ testing? The record doesn't show, Your Honor, what... Was the IQ test the focus of the administrative hearing? First of all, was she represented by counsel? Yes, she was, Your Honor. Was that the focus of the hearing?  The hearing, Your Honor, was an opportunity for the appellant to talk about her life and what she did. I know what the hearings are, but when did the IQ test issue come to be the focus of the proceeding? The issue came up, Your Honor, when the ALJ was going through the five-step sequential evaluation and determined at step three... So he just dropped that as a bomb on the claimant and her attorney? There was no mention of the IQ examinations during the administrative hearing. Was it one of the... Was it... In your initial application, was mild mental retardation a basis for the claim? She did. She alleged that in her application material, Your Honor. So everybody knew it was an issue at the front end of the hearing? I believe so. However, the issue... All right. And he decides at the back end he needs more testing. Now, do we have the communication from the ALJ to the claimant and her lawyer saying, at the end of the hearing, I need more? And why? No, Your Honor. The record does not have... Isn't that a plainly deficient administrative record? I don't believe so, Your Honor. And Appellant doesn't raise that issue. The issue... He just said remand for proper consideration. How can you be more direct than that? The issue is not whether the ALJ erred in not sending her out, Your Honor. The issue is whether this score is valid. This performance IQ score of 59 is valid. Well, but if the finding with respect to didn't do her best is not fully supported, that would suggest the ALJ had a good reason to say, I guess I need some more recent or confirming IQ testing, right? Absolutely, Your Honor. So why doesn't the claimant have a right to be in on that inquiry? Well, Your Honor, we... Did she say anything at the end of the hearing? No. The ALJ, I mean? No, not about additional testing, Your Honor. But again, as my opposing counsel pointed out, the regulations state that IQ testing is presumed to be consistent after age 16, and the 2006... But the issue here is whether the prior one was valid. We all know it was 59 to 61. That's not an issue. Well, correct, Your Honor. If she's 61, you know, she doesn't get listed. She may still be disabled, but she doesn't have a listed impairment. If she's 59, she does. Do you disagree that we have to use the 59 since it's the lowest score? No, Your Honor. That's correct. That when examined... Well, she would have been listed. And how do you use the word someone makes a fair effort? I think the important thing to note is that... I mean, that's not like she didn't try or she was a malinger. She made a fair effort. But obviously, the ALJ was concerned about that and wanted more. That's where we seem to hit the wall here. Absolutely. Dr. Durant stated not only that she put forth fair effort, he also stated she put forth poor effort toward the items at hand. He consistently said that she gave up easily. Are you surprised by that? Someone who spent a lifetime confronting challenges that she's not able to deal with, finds things frustrating and it slows her down. I mean, because the expert does reach a conclusion, given all the factors about her status. Well, the conclusion we submit, Your Honor, is that there was no... It was very inconsistent and equivocal in its nature. And so, going to your point, she did have some persistence. I think shown by the fact that she did fail the driving test at least three times and passed it, she showed that she can keep going and adapt to different things. So, going to your point, I think that the record shows that she does have the ability to persist and does have the ability to break through whatever impairment she may have. The expert didn't say she quit on him. He said she gave fair effort. Just that she had difficulty, right? Well, the examiner, Dr. Durant, also stated that she put forth poor effort and the motivational factors must be kept in mind when reviewing these scores. I think what he's trying to say is that the appellant did not put forth maximum effort on examination. She put forth suboptimal. Is maximum effort? I mean, I'm getting lost here a little bit. But I keep going back to Judge Loken's inquiry. So, the ALJ confronted with this wanted more and we never got there. He attempted to do so, but he was not... But appellant did not show for her constitutive examination and other examinations. We don't know what she was told about. We don't, Your Honor. She was represented at the hearing and it was clear at the end of the hearing that this testing score was critical. Wouldn't you think her lawyer would have made darn sure she went there? She did show for a 2006 examination and she was able to... No, no, that has nothing to do with the question. Don't we... Isn't it fair to assume that the lawyer would have... He would have driven her there. The car was the problem. Was the lawyer told that the ALJ had concluded that we have inconclusive substantiation or validation of the 59 score, which is important to Step 3, so I need more. I need a more... I need a current test. Wouldn't a normal, legally trained fact finder, with an obligation to develop the record, have done that? As opposing counsel stated, Your Honor, we don't know why she didn't show. We don't know... No, I'm talking about why the ALJ didn't make a record that permits us to be confident that she was a no-show the way his opinion wrote it up. Of her choice and volition, not other random intervening... And that this was carved. She was told to come for a malingering exam. Well, it's not surprising that the person with this background might be quite frightened of that. Now, if she was told we've got to have... There's a question about the IQ and you need to do it over again, do your best. As a lawyer, as her lawyer surely would have done, and as the ALJ should have done, it's a completely different record. Indeed, Your Honor, it's not... I mean, I affirm on one record and I reverse on the other record. I don't know which... I don't know what I've got. We can only go with the record we have before us and it shows that the ALJ... So we need to remand, don't we? No, Your Honor, I don't... Why not? The ALJ... And yet we have a hopelessly inadequate development, our record as to the ALJ's fulfillment of his duty to develop an adequate record. Now, why doesn't that demand a remand? If the case is going to turn on this, how do we say I'm sorry the door is shut even though we don't know why? We can go with what's on the record and the record shows that the 2006 examination showed that appellant put forth poor effort on the examination. Dr. Druck states so himself. Moreover... No, he doesn't say poor. He says... He says an... He used an ambiguous word, fair. Respectfully, Your Honor, I think he does also state that she put poor effort towards the tasks at hand and that the record shows that... He also states the motivational factors must be kept in mind. But if you really believe that, why didn't he reach a different conclusion than giving a diagnosis? I don't know, Your Honor. In the case law that we cite in our briefs, this Court has affirmed ALJ's decisions in which an examiner states that an exam is valid even though a claimant did not put forth optimal or put forth suboptimal effort. And this Court has upheld that the ALJ can reject those IQ scores even when the examiner states that these scores are valid. When there's evidence that the claimant did not put forth maximum effort on the examination... That gets us back to where we were. Obviously, there was enough concern that we wanted... He wanted another or she wanted another examination, but we don't know what happened after that. We only go with what the ALJ said in his decision, Your Honor. Again, it's not an issue that appellant raises in this case. You talked about page... Oh, wait a minute. Page 18. He doesn't have... There isn't an 18-page decision in the addendum. No, I apologize, Your Honor. It's page 18 of the administrative transcript. That would be addendum page 7 is what I have. So you weren't referring to his written decision? You were referring to something he said at the hearing? No, Your Honor. In the ALJ's written decision on page 18 of the administrative transcript. What page of the opinion? I've got the opinion in the addendum. I didn't bring... It's page 7, Your Honor, of the ALJ's decision. The claimant was sent out for a recent evaluation of her function, followed by a car. Well, is the sending out in the hearing transcript? No, Your Honor, it's not.     It's not in the hearing transcript? No, Your Honor. So we have no idea whether sending out was in a... the way Putin would do it, or the way a fair-minded fact-finder would do it. The ALJ... How do we know? I'm pretty sure he didn't call her up. We don't have that in the transcript, Your Honor. The only thing we have is this. And again, I would just point to the fact that the appellant does not raise this issue, that she didn't receive notice or wasn't aware of it. Wait, wait. It's not a question of receiving notice. It's a question for a person, if she's 61, did she get a notice she understood and appreciated the significance of? And going to that, Your Honor, I would have to show that she received notice of the hearing and was able to come to the hearing, and she received notice of the 2006... No, I'd want evidence. If the ALJ was... If his action was for the purpose of adequately developing the record, as the law requires, I don't know if it was him or her, him to do, then it's not just sending out a notice to appear like an immigration removal hearing. You've got to explain. The record, Your Honor, does not contain the notice that the ALJ sent out. There's no reason... As simple as if this matters, it's an inadequate record. And going to that, Your Honor, I respectfully submit that the record is sufficient for the ALJ to determine that the IQ score of 59 was not valid and that Appellant had the burden of showing that she had that score and she did not. I see my time is over. Thank you. So you're saying that despite the ALJ's legal duty to develop the record, if she didn't come to the hearing with a new IQ test, she loses? That was what I just heard you argue. My time is over. May I please answer? Isn't that what you just argued? That's correct, Your Honor. Mr. Wallace, do you have some time? Counsel, it's just over one minute for a rebuttal, Your Honor. Your Honor, may it please the Court, unless the Court has any questions, I'll wait my rebuttal time. I'm not sure why this procedural issue isn't even before us. Or is it defaulted, if you will? I'm sorry? Well, is the develop the record issue not preserved? The develop the record issue? That we've been discussing with opposing counsel. Whether the ALJ made an adequate record that the ALJ was seeking confirming or non-confirming updated IQ testing and adequately conveyed that request to Ms. Channell when she was a no-show for what his opinion describes as a carbon test. But now it appears it wasn't. Yes, I think it's very difficult to understand exactly. Is that before us? Is that before you? Was there a complaint to the appeals counsel that this wasn't a sufficiently developed record? I'm not sure about that. Sometimes the... I think the question of whether something is before the appeals counsel would not necessarily affect whether it's defaulted for purposes of district court. I think the question was we all the time maintain that this case needs to be remanded for proper consideration of our IQ score. And we argued that in district court that this carb test was not going to shed the proper light on that because the carb test has some dubious applicability to people who are mildly retarded. And in fact, one of the citations that we included there in our opinion... Back to that. Exactly. Thank you, Your Honor. Thank you, counsel. The case has been well-briefed and argued.